UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDMOND TADEFA, | No. C-14-0677 EMC |
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| FEDEX OFFICE & PRINT SERVICES, INC., | **(Docket No. 41)** |
| Defendant. | |

Plaintiff Edmond Tadefa, proceeding pro se, has filed suit against Defendant FedEx Office & Print Services, Inc., asserting three claims for relief: (1) violation of the California Unruh Civil Rights Act; (2) negligence; and (3) intentional infliction of emotional distress. Currently pending before the Court is FedEx's motion for summary judgment. Having considered the parties' briefs and accompanying submissions, the Court hereby **GRANTS** FedEx's motion.

## I.   FACTUAL & PROCEDURAL BACKGROUND

Mr. Tadefa initiated this lawsuit in state court in November 2013. *See* Compl. In February 2014, FedEx removed the case to federal court. In January 2015, FedEx first notified the Court (via a case management statement) that it intended to file a motion for summary judgment. At a case management conference held on January 15, 2015, the Court set a briefing and hearing schedule for the motion for summary judgment. In the civil minutes for the hearing, the Court directed Mr. Tadefa "to be familiar with his obligations to prepare his opposition to Defendant's motion for

1  summary judgment." Docket No. 39 (civil minutes). The Court also gave Mr. Tadefa the following
2  notice and warning about procedures for a motion for summary judgment:

> The defendants may make a motion for summary judgment by which they seek to have your case dismissed. A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case. . . . Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact – that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendants' declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted, your case will be dismissed and there will be no trial. *Rand v. Rowland*, 154 F.3d 952, 962-63 (9th Cir. 1998).

Docket No. 39 (civil minutes). Finally, the Court provided Mr. Tadefa with a Pro Se Handbook and directed him to contact the Legal Help Center to obtain free legal advice.

FedEx filed its motion for summary judgment on June 25, 2015, in compliance with the Court's briefing and hearing schedule. In support of its motion, FedEx submitted declarations from its employees as well as the deposition testimony of Mr. Tadefa himself. *See* McCoy Decl ¶ 3 (noting that the deposition was taken in November 2014).

The day before his opposition was due, Mr. Tadefa sought an extension of time to respond to the motion. The Court granted Mr. Tadefa's request in part, giving him 28 days (rather than the requested 30) to file an opposition. *See* Docket No. 49 (order). The Court also construed Mr. Tadefa's motion as a motion to compel and, in a subsequent order, the Court granted in part and denied in part that motion. *See* Docket No. 55 (order). For those documents it ordered to be produced, the Court instructed that production should take place almost a week before Mr. Tadefa's opposition to the summary judgment motion was due – precisely so that Mr. Tadefa could "review

1  the documents (if any) and incorporate them into his opposition to FedEx's summary judgment
2  motion."[1]  Docket No. 55 (Order at 2).
3      Subsequently, Mr. Tadefa timely filed his opposition to FedEx's summary judgment motion.
4  However, Mr. Tadefa did not submit any substantive evidence to oppose the motion.  Instead, Mr.
5  Tadefa largely argued that summary judgment is not appropriate because (1) it would deprive him of
6  a jury trial and (2) FedEx has not cooperated in discovery.  Other than the one motion which the
7  Court construed as a motion to compel, and for which the Court granted him partial relief, Mr.
8  Tadefa has not filed any discovery motion with the Court.
9      Because Mr. Tadefa has, for the most part, not submitted any substantive evidence in
10 opposition to FedEx's motion, the Court has before it the following undisputed evidence from
11 FedEx:
12 • *Declaration of Mario Barajas.*  Mr. Barajas is the former Center Manager of the FedEx
13   center at issue.  In his declaration, Mr. Barajas testified, *inter alia*: (1) that he "received
14   numerous reports from Team Members that Mr. Tadefa was engaging in harassing and
15   intimidating behavior, such as "raising his voice to team members" and physically touching
16   Team Members when they attempted to help him" (the latter of which happened on "at least
17   two separate instances"), Barajas Decl. ¶¶ 6, 12; (2) that "Mr. Tadefa would refuse to leave
18   the [FedEx] center when it was closing at 11:00 p.m.," Barajas Decl. ¶ 8; (3) that Mr. Tadefa
19   slept in the FedEx center "[o]n several occasions," Barajas Decl. ¶ 9; (4) that Mr. Tadefa
20   became "visibly upset" when Mr. Barajas refused to fire an employee for not typing Mr.
21   Tadefa's handwritten notes onto Mr. Tadefa's laptop, Barajas Decl. ¶ 11; and (5) that Mr.
22   Tadefa "frequently us[ed] the restroom facilities to bathe."  Barajas Decl. ¶ 12.  Mr. Barajas
23   "formed the opinion that [Mr. Tadefa's] ongoing behavior and conduct, some of which [he]
24   witnessed [personally] and some of which was reported to [him] by other employees, was

---

[1] It appears that there were no documents responsive to the document request for which the Court ordered production.  *See* Opp'n, Ex. (supplemental response to RFP No. 1) (stating that, "[s]ince November 8, 2010, no customer except Plaintiff has filed a lawsuit against FedEx Office complaining of discrimination on the basis of race/national origin, age, or disability, at the FedEx Office center located [in] Union City").

3

hampering the [FedEx] center's ability to efficiently operate, and was creating an atmosphere that was not conducive to team members and customers conducting their business in a friendly, welcoming environment." Barajas Decl. ¶ 12. Mr. Barajas communicated with his District Manager, Alexander Prodan, and the two "agreed that Mr. Prodan would issue a 'divorce letter' to Mr. Tadefa, which would communicate to Mr. Tadefa that it was apparent FedEx Office was unable to establish a mutually satisfactory business relationship with him, and that FedEx Office believed Mr. Tadefa would be much happier doing business in another copy center." Barajas Decl. ¶ 18. On July 30, 2012, Mr. Prodan sent the divorce letter to Mr. Tadefa via e-mail. *See* Barajas Decl., Ex. G (e-mail).

- *Declaration of Gabe Pasibe.* Mr. Pasibe is a FedEx employee who works at the FedEx center at issue. In his declaration, Mr. Pasibe testified about his encounters with Mr. Tadefa, which included Mr. Tadefa raising his voice toward him, *see* Pasibe Decl. ¶¶ 4, 6; Mr. Tadefa refusing to leave at closing time, *see* Pasibe Decl. ¶ 4; Mr. Tadefa interrupting him while he was helping other customers, *see* Pasibe Decl. ¶ 6; and Mr. Tadefa shoving another FedEx employee after the employee touched Mr. Tadefa's documents in an effort to assist Mr. Tadefa. *See* Pasibe Decl. ¶ 7. Mr. Pasibe agreed with the decision to issue the divorce letter "because that decision protected the health and mindset of the [FedEx] center Team Members." Pasibe Decl. ¶ 10.

- *Declaration of Hammad Queddus.* Mr. Queddus is a FedEx employee who works at the FedEx center at issue. In his declaration, Mr. Queddus testified about his encounters with Mr. Tadefa, which included Mr. Tadefa shoving Mr. Queddus and slapping his hands away from a document that he was touching (because he was trying to help Mr. Tadefa clean up so that the center could close on time), *see* Queddus Decl. ¶ 4; Mr. Tadefa being rude to both employees and customers, *see* Queddus Decl. ¶ 6; Mr. Tadefa accusing employees of stealing his documents, *see* Queddus Decl. ¶ 8; and Mr. Tadefa using the bathroom as if he were bathing or washing there. *See* Queddus Decl. ¶ 8. Mr. Queddus agreed with the decision to issue the divorce letter "because Mr. Tadefa was extremely rude to me and other team members and customers on several occasions." Queddus Decl. ¶ 10.

4

- *Declaration of Luka Diekman.* Mr. Diekman is an Assistant Manager at the FedEx center at issue. In his declaration, Mr. Diekman testified, *inter alia*: (1) that, after the issuance of the divorce letter, he "was made aware of the decision to prohibit Mr. Tadefa from conducting business at the [FedEx] center," Diekman Decl. ¶ 5; (2) that, in spite of the letter, Mr. Tadefa returned to the center, *see* Diekman Decl. ¶ 6; (3) that Mr. Diekman informed Mr. Tadefa that he had to leave, *see* Diekman Decl. ¶ 7; and (4) that Mr. Diekman opened the door for Mr. Tadefa to leave. *See* Diekman Decl. ¶ 7. Mr. Diekman also testified that he agreed with the decision to issue the divorce letter because "Mr. Tadefa was a constant disruption to the center's business, to other customers using our Center, and also because Mr. Tadefa was rude to both team members and customers, including me." Diekman Decl. ¶ 8.
- *Deposition testimony of Mr. Tadefa.* In his deposition, Mr. Tadefa testified, *inter alia*: (1) that FedEx violated his civil rights because it "told me to leave without reasoning with me," Tadefa Depo. at 36; *see also* Tadefa Depo. at 74 (stating that it was an "irrational" decision to exclude "because we pay . . . as customers" and "I never asked them [to do] anything out of the ordinary"); (2) that the employee who told him to leave did not touch him or his things, *see* Tadefa Depo. at 44; (3) that he did not recall anyone at FedEx saying anything about his race, *see* Tadefa Depo. at 51; (4) that an unidentified FedEx employee once referred to him as "'the same old guy' [or] something like that" (but not on the day that he was excluded from the FedEx center), Tadefa Depo. at 52; (5) that he was legally disabled "from [his] work" but that he had no mental disability at least,[2] Tadefa Depo. at 82, 87; and (6) that FedEx's actions toward him were "upsetting" and "[d]isturbing" – "I want to be treated like a human being." Tadefa Depo. at 88.

---

[2] In his opposition, Mr. Tadefa stated that he intended to bring proof of his disability to the hearing on the summary judgment motion, *see* Opp'n at 4; however, that is not proper. Such evidence should have been provided as part of Mr. Tadefa's briefing, not after all briefing had closed. That being said, the Court acknowledges that Mr. Tadefa has attached to his opposition what appears to be a document from the Social Security Administration ("SSA"). That (unauthenticated) document indicates that Mr. Tadefa received disability benefits from May 1984 to May 2015. *See* Docket No. 57 (Opp'n, Ex. F). The document, however, does not provide any information about Mr. Tadefa's disability. In any event, as the Court explained at the hearing, Tadefa's proof of disability does not prove he was discriminated against by FedEx *because of* his disability.

## II. **DISCUSSION**

A.   Legal Standard

Under Federal Rule of Civil Procedure 56(a), a party may seek summary judgment on a claim or even part of a claim. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

> The moving party has the burden of establishing the absence of a genuine dispute of material fact. The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient. . . ." "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."

*City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049-50 (9th Cir. 2014).

Contrary to what Mr. Tadefa argues, the summary judgment process does not violate his Seventh Amendment right to a jury trial. *See In re Slatkin*, 525 F.3d 805, 811 (9th Cir. 2008) (stating that "a summary judgment proceeding does not deprive the losing party of its Seventh Amendment right to a jury trial"); *see also McClamrock v. Eli Lilly & Co.*, 504 Fed. Appx. 3, 4 (2d Cir. 2012) (stating that the Seventh Amendment right to a jury trial "is not violated by an award of summary judgment where, as here, there are no disputed issues of material facts"); *Zivojinovich v. Barner*, 525 F.3d 1059, 1066 (11th Cir. 2008) (rejecting argument that summary judgment deprives a party of its Seventh Amendment right to a jury trial because, under the Supreme Court's interpretation of Rule 56, summary judgment can be avoided if there is evidence that a reasonable jury could return a verdict for the nonmoving party); *Baranowski v. Hart*, 486 F.3d 112, 126 (5th Cir. 2007) (stating that "'[t]he function of the jury is to try the material facts; where no such facts are in dispute, there is no occasion for a jury trial[;] [t]hus the right to trial by jury does not prevent a court from granting summary judgment'").

B.  Alleged Failure of FedEx to Cooperate in Discovery

As indicated above, Mr. Tadefa has made no real effort to provide any substantive evidence to oppose FedEx's summary judgment motion. Rather, the bulk of his opposition is a condemnation of FedEx based on its purported failure to cooperate in discovery. The problem for Mr. Tadefa is that he has not taken any steps to remedy the alleged failure of FedEx to cooperate. He has not filed, for example, any motion to compel – this in spite of the fact that the Court previously construed one of his filings as a motion to compel and granted him partial relief.

Even if the Court were to construe Mr. Tadefa's opposition as a Rule 56(d) request, he would be no better off. Rule 56(d) provides as follows:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1)  defer considering the motion or deny it;
>
> (2)  allow time to obtain affidavits or declarations or to take discovery; or
>
> (3)  issue any other appropriate order.

Fed. R. Civ. P. 56(d).

Mr. Tadefa's Rule 56(d) request is problematic because, in effect, he has already made one Rule 56(d) request earlier (*i.e.*, asking for an extension of time to oppose the summary judgment motion and moving to compel), and Mr. Tadefa has not shown that he may make successive Rule 56(d) requests in the attempt to avoid summary judgment. Even if he could, Rule 56(d) requires that the nonmoving party show by affidavit or declaration why he cannot present facts essential to justify his opposition to the summary judgment motion. Mr. Tadefa has not satisfied this requirement. For example, Mr. Tadefa could have deposed FedEx employees to determine if they were motivated by a race-, disability-, or age-based animus or to establish if they had a reason for issuing the divorce letter, but he did not do so. Moreover, Mr. Tadefa does not need to take any discovery from FedEx to provide evidence about, *e.g.*, his disability and the alleged pain he suffered as a result of FedEx's actions.

1       Accordingly, to the extent Mr. Tadefa has made a second Rule 56(d) request, the request for relief is denied. The denial is especially appropriate given the Court's warnings to Mr. Tadefa about how the summary judgment process works, with such warnings given well in advance of FedEx even filing its motion for summary judgment. The Court thus turns to the merits of FedEx's motion for summary judgment.

C.     <u>Claim for Violation of the California Unruh Civil Rights Act</u>

      In his complaint, Mr. Tadefa alleges that, in excluding him from the FedEx center, FedEx was motivated by a race-, disability-, or age-based animus and thereby violated his rights as protected by the Unruh Civil Rights Act. *See* Cal. Civ. Code § 51(b) (providing that "[a]ll persons within the jurisdiction of this state are free and equal, and no matter what their . . . race, . . . national origin, disability, . . . are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever"); *Pizarro v. Lamb's Players Theatre*, 135 Cal. App. 4th 1171, 1175 (2006) (noting that "[c]ourts have found age to be a category that, although not mentioned in the Act, may be a characteristic reached by the Act when it is used as an arbitrary class-based generalization").

      Mr. Tadefa's race claim fails as a matter of law because he has not provided any evidence from which an inference could be made that FedEx or any of its employees had a race-based animus or took actions against Mr. Tadefa because of his race. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating that Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"); *Stevenson v. Harmon*, No. 07-CV-277 W (PCL), 2009 U.S. Dist. LEXIS 20540, at *7 (S.D. Cal. Mar. 13, 2009) (stating that "[s]ummary judgment should be entered against a party if there is insufficient evidence to establish the existence of an essential element of a party's case"). In fact, at his deposition, Mr. Tadefa stated that he did not recall anyone at FedEx ever saying anything about his race. *See* Tadefa Depo. at 51.

      As for the disability claim, it fails for similar reasons. While Mr. Tadefa has provided some (unauthenticated) evidence that he has a disability (*i.e.*, the SSA document, *see* note 2, *supra*), there

is nothing to show what exactly that disability is.  Thus, the Court cannot say that FedEx knew or should have known about the disability (*e.g.*, if Mr. Tadefa had a physical disability that facially obvious) and therefore might potentially have taken action against him on the basis of the disability.  Nor was there any evidence presented suggesting Mr. Tadefa was discriminated against *because of* his disability.[3]

With respect to the age claim, the only evidence that is potentially relevant is Mr. Tadefa's deposition testimony that an unidentified FedEx employee once referred to him as "'the same old guy' [or] something like that."  Tadefa Depo. at 52.  But Mr. Tadefa also testified that that remark was not made on the day he was excluded from the FedEx center, and there is nothing to suggest that the remark was made by the persons who decided to exclude Mr. Tadefa (*i.e.*, Mr. Barajas and his supervisor Mr. Prodan) or who may have contributed to that decision.  *Cf. Merrick v. Farmers Ins. Group*, 892 F.2d 1434, 1438 (9th Cir. 1990) (stating that "'stray' remarks are insufficient to establish discrimination" for purposes of claim asserted pursuant to the federal Age Discrimination in Employment Act).

Finally, with respect to all of the claims, FedEx has tendered evidence showing that it had a legitimate business reason for issuing the divorce letter to Mr. Tadefa and excluding him – *i.e.*, that there was a history of conduct on the part of Mr. Tadefa that was a hindrance to both employees of FedEx as well as its customers.  *See O'Connor v. Vill. Green Owners Ass'n*, 33 Cal. 3d 790, 794 (1983) (stating that "the act prohibits a business establishment from engaging in any form of arbitrary discrimination" but "does not absolutely prohibit such an establishment from excluding a customer in all circumstances" – *e.g.*, "[c]learly, an entrepreneur need not tolerate customers who damage property, injure others or otherwise disrupt his business") (internal quotation marks omitted); *Semler v. Gen. Elec. Cap. Corp.*, 196 Cal. App. 4th 1380, 1393 (2011) (noting that "'legitimate business interests may justify limitations on consumer access to public accommodations[;] [i]n [several] case[s], the particular business interests . . . in maintaining order,

---

[3] As the Court explained to Mr. Tadefa at the hearing, it is not enough under the Unruh Act for him to show that he has a disability.  Mr. Tadefa must show that he was treated adversely *because of* his disability.

9

complying with legal requirements, and protecting a business reputation or investment were recognized as sufficient to justify distinctions among its customers'") (emphasis omitted).

D.  Negligence Claim

In his complaint, Mr. Tadefa asserts a claim for negligence because FedEx excluded him from the center "for no valid reason." Compl. at 4. "In order to establish liability on a negligence theory, a plaintiff must prove duty, breach, causation, and damages." *Conroy v. Regents of Univ. of Cal.*, 45 Cal. 4th 1244, 1250 (2009). Here, even if the Court assumes, in Mr. Tadefa's favor, that FedEx owed him a legal duty, there is insufficient evidence to show that it breached that duty. Any duty owed would be one of "reasonable care," *Verdugo v. Target Corp.*, 59 Cal. 4th 312, 326 (2014), and, for the reasons discussed above, here, there is undisputed evidence that FedEx acted reasonably in deciding to exclude Mr. Tadefa. As FedEx notes, if it owed a duty to Mr. Tadefa, it also owed a duty to its other customers as well as its employees, and there is evidence that FedEx acted reasonably because Mr. Tadefa's conduct was affecting both FedEx's other customers and its employees.

E.  Claim for Intentional Infliction of Emotional Distress

Finally, in his complaint, Mr. Tadefa pleads a claim for intentional infliction of emotional distress, again, because he "was escorted out of the [FedEx] store WITHOUT being told a reason." Compl. at 7. "The essential elements of an action for intentional infliction of emotional distress are (1) outrageous conduct, (2) an intent to cause or a reckless disregard of the possibility of causing emotional distress, (3) severe or extreme emotional distress, and (4) actual and proximate cause of the emotional distress by the outrageous conduct." *Symonds v. Mercury Sav. & Loan Ass'n*, 225 Cal. App. 3d 1458, 1468 (1990). As discussed above, there is undisputed evidence that FedEx acted reasonably in deciding to exclude Mr. Tadefa, and therefore FedEx did not engage in any outrageous conduct. Moreover, there is insufficient evidence that Mr. Tadefa suffered any "severe or extreme emotional distress" as a result of the incident at issue. Notably, Mr. Tadefa testified in his deposition that FedEx's actions toward him were simply "upsetting" and "[d]isturbing." Tadefa Depo. at 88.

### III. CONCLUSION

For the foregoing reasons, the Court grants FedEx's motion for summary judgment in its entirety. Mr. Tadefa's Unruh Act claim fails because he must show more than that he was treated adversely; rather, he must show he was excluded based on a protected characteristic such as his race, disability, or age. For the remaining tort claims, there is undisputed evidence that FedEx made a legitimate business decision in deciding to exclude Mr. Tadefa. Mr. Tadefa has been given a fair opportunity to present evidence to support his case, and to seek relief from the Court to obtain the necessary evidence, but he has not done so.

The Clerk of the Court is ordered to enter judgment in FedEx's favor in accordance with this opinion and close the file in the case.

This order disposes of Docket No. 41.

IT IS SO ORDERED.

Dated: August 28, 2015

_____
EDWARD M. CHEN
United States District Judge